# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEA WOLF, *an individual and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CLUBCORP USA, INC., et al.,<br><br>Defendants. | Case No. 22-cv-1688-MMA (JLB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 10] |

Plaintiff Lea Wolf brings this putative class action against Defendants ClubCorp USA, Inc. ("ClubCorp") and ClubCorp Golf of California LLC ("Morgan Run" and collectively with ClubCorp, "Defendants"). Defendants removed this action from the Superior Court of California, County of San Diego, to the United States District Court for the Southern District of California pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332. *See* Doc. No. 1.

Two motions are pending before the Court. Doc. Nos. 10, 11. Defendants move to compel arbitration of Plaintiff's claims, and dismiss or stay the action pursuant to the Federal Arbitration Act. *See* Doc. No. 10. Additionally and in the alternative, Defendants move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of Plaintiff's Complaint pursuant to Rule

12(b)(6) or 12(f).  Doc. No. 11.  Plaintiff filed an opposition to both motions, to which Defendants replied.  *See* Doc. Nos. 12–15.  For the reasons set forth below, the Court **GRANTS** Defendants' motion to compel arbitration.

## I. MOTION TO COMPEL ARBITRATION

**A.    Background**

Broadly, Plaintiff alleges that Defendants engaged in sex discrimination "in services and privileges provided to the female members of the Defendant[s'] business establishment," Morgan Run Resort & Club, a private tennis club in San Diego County.  Doc. No. 1-4 ("Compl.") ¶¶ 1, 8.  Plaintiff alleges that both Defendants "own[] and [o]perate the CLUB."  Compl. ¶¶ 7–8.  Defendants, through a declaration by Fernando Fry, the General Manager of Morgan Run Club and Resort, state that Morgan Run is "the owner and operator of the Club."  Doc. No. 10-2 ("Fry Decl.") ¶ 3.[1]  On or about November 21, 2017, Plaintiff completed and signed an application for membership to the Club.  *Id.* ¶ 8.  The application contains the following text:

> If accepted into membership, I/we agree to conform to and be bound by the enrollment terms contained herein, the Membership Bylaws, the Rules and Regulations, and written membership policies of the Club ("Membership Documents") as they may be amended from time to time.  I/We further understand that agreeing to be bound by the Membership Documents of the Club is a part of my/our agreement for membership privileges with the Club.  I/We specifically understand this membership is not divisible.  I/We hereby acknowledge receipt of a copy of the Membership Bylaws and the Rules and Regulations of the Club.  I/We hereby acknowledge and understand that the ONE benefits are subject to change at any time and that the privileges associated therewith may change throughout the term of my membership.

*See* Doc. No. 10-3 ("Membership Application") Ex. 1 at 4; *see also* Fry Decl. ¶ 8.

---

[1] The Court need not resolve this dispute in order to rule on the motion to compel arbitration.

1   Plaintiff alleges that "[t]he CLUB treated the male members more favorably than
2   [their] female counterparts." Compl. ¶ 13.  Plaintiff brings two causes of action against
3   Defendants: (1) unlawful discrimination in violation of the Unruh Act, California Civil
4   Code §§ 51, *et seq.*; and (2) unfair business practices in violation of the California
5   Business and Professions Code §§ 17200, *et seq.  Id.*  ¶¶ 47–73.

**B.    Legal Standard**

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4.  Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration.  *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements.  *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011).  Federal courts are required to rigorously enforce an agreement to arbitrate.  *See id.*  Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476–77 (1989).

In determining whether to compel a party to arbitrate, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks and citation omitted).  If the Court finds that the answers to those questions are "yes," the Court must compel arbitration.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  If there is a genuine dispute of material fact as to any of these queries, a district court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002). As such, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Concepcion*, 563 U.S. at 339–41.

**C.   Analysis**

*1.   Arbitration of Claims Against Defendant Morgan Run*

As an initial matter, it is undisputed that Plaintiff and Morgan Run are signatories to the contract in question—the membership contract. *See* Membership Application at 4, 5. Defendants argue that Plaintiff is "estopped from arguing that she did not agree to the arbitration provision in the Bylaws because her claims derive from the Bylaws." Doc. No. 10-1 at 12. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks omitted)). However, Defendants provide no authority that the doctrine of equitable estoppel applies where two parties are both signatories of a contract, and the Court is unaware of any such authority. *Cf. Pacific Fertility Cases*, 85 Cal. App. 5th 887, 893 (2022) (internal citations and quotation marks omitted) (stating that "[i]n the context of arbitration, there are two circumstances in which equitable estoppel can apply. The first is when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. . . . The second is when the claims against the nonsignatory are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause.").

Alternatively, Defendants move the Court to compel Plaintiff to arbitrate her claims pursuant to the Bylaws of Morgan Run, which include an arbitration provision.

Doc. No. 10-1 at 12–15.  Defendants argue that "there is no question that the parties consented to the arbitration of disputes" because Plaintiff signed a membership application, "wherein she [] acknowledged receipt of a copy of the Membership Bylaws . . . and agreed to conform to and be bound by . . . the membership Bylaws."  Doc. No. 10-1 at 13 (alterations in original omitted) (first citing Fry Decl. ¶ 8; and then citing Membership Application).  Additionally, Defendants argue that "[e]ven if Plaintiff had not signed a form acknowledging receipt of and her agreement to be bound by the Bylaws at the time of application, the arbitration provision would still be enforceable because the arbitration provision was incorporated by reference" through Plaintiff's membership application to Morgan Run.  *Id.* at 8, 14.

      Plaintiff argues that the "membership contracts do not contain an arbitration agreement" and that the "membership contract[] do[es] not validly incorporate by reference the terms of the arbitration agreement[] that are contained in the Bylaws" and that Plaintiff therefore "did not provide mutual assent to arbitrate [her] dispute[]."  Doc. No. 12 at 7–8.  In particular, Plaintiff argues that although "[t]he membership contract states that the Bylaws were provided to the Plaintiff. . . . this language was buried in the contract[.]" *Id.* at 7.  Additionally, Plaintiff urges that "the Bylaws containing the arbitration provision were not provided to the Plaintiff even after signing the membership agreement, upon request of the Plaintiff" and that Defendants only "provided the Plaintiff with the Bylaws right before they terminated her membership at the club."  *Id.* at 8–9 (citing Doc. No. 12-1 ("Pl. Decl.")).

      "Under California law, the party seeking to compel arbitration has the burden of proving . . . by a preponderance of the evidence" the existence of an agreement to arbitrate.  *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 721 (N.D. Cal. 2012) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).  "California law permits parties to consent to, and incorporate by reference into their contract, the terms of another document." *See Greenley v. Avis Budget Grp., Inc.*, No. 19-cv-00421-GPC-AHG, 2020 U.S. Dist. LEXIS 54234, at *13–14 (S.D. Cal. May 26, 2020) (citing

*Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994)); *see also Pulido v. Caremore Health Plan, Inc.*, No. CV2002730ABAFMX, 2020 WL 5077353, at *4 (C.D. Cal. May 12, 2020).

> For the terms of another document to be incorporated into the document executed by the parties, the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.

*Id.* (quoting *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997)).

Plaintiff does not dispute that she signed a membership contract with Morgan Run. *See* Doc. No. 12 at 7–8 (acknowledging that Plaintiff signed the contract); Membership Application at 4, 5. Although Plaintiff argues that language in the membership contract regarding the Bylaws "was buried in the contract . . .", *see* Doc. No. 12 at 8, this is not borne out by the document provided to the Court. The application—including a page titled "Addendum to Candidate Application Form" is four pages long and contains six references to "Membership Bylaws." *See* Membership Application. On the third page of the application is the following text:

> If accepted into membership, I/we agree to conform to and be bound by the enrollment terms contained herein, the Membership Bylaws, the Rules and Regulations, and written membership policies of the Club ("Membership Documents") as they may be amended from time to time. I/We further understand that agreeing to be bound by the Membership Documents of the Club is a part of my/our agreement for membership privileges with the Club. I/We specifically understand this membership is not divisible. **I/We hereby acknowledge receipt of a copy of the Membership Bylaws and the Rules and Regulations of the Club.** I/We hereby acknowledge and understand that the ONE benefits are subject to change at any time and that the privileges associated therewith may change throughout the term of my membership.

Membership Application at 4 (emphasis added).

Also on the third page, in bold font, is the following text:

> **I/WE ACKNOWLEDGE THE MEMBERSHIP BYLAWS AND THE RULES AND REGULATIONS OF THE CLUB PROVIDE THE DETAILS OF THE CLUB'S MEMBERSHIP POLICIES, CONDUCT AND OBLIGATIONS, INCLUDING, BUT NOT LIMITED TO, PROVISIONS IN THE EVENT OF DIVORCE, FOR ARBITRATION OF DISPUTES, RESIGNATION, REDEMPTION OF MEMBERSHIPS, FINANCIAL OBLIGATIONS, DISCPLINARY ACTION, RELEASE OF LIABILITY FOR PERSONAL INJURY AND THEFT. . . .**

*Id.*

The Court concludes that the reference to the Bylaws was clear and unequivocal, and that the reference was called to Plaintiff's attention and Plaintiff consented thereto. *See Greenley*, 2020 U.S. Dist. LEXIS 54234, at *13–14 (concluding that the placement and presentation of a document the defendant sought to incorporate by reference was sufficiently called to the plaintiff's attention where "[t]he Arbitration Provision was neither relegated to 'the corner of a document (the folder jacket),' *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1006 (N.D. Cal. 2012), nor presented to Plaintiff 'without . . . an opportunity to read or to comprehend the fine print.' *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1301 (9th Cir. 2006)"); *cf. Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1324–26 (9th Cir. 2015) (finding an arbitration provision enforceable where the plaintiff received written notice of the arbitration provision through a document that "explicitly notified [the plaintiff] the [Company Police] Manual contained a Dispute Resolution Policy, and it did so in two places[,]" and the plaintiff acknowledged the same in writing).

Next, "[w]hether a document purportedly incorporated by reference was 'readily available' is a question of fact." *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 895, 71 Cal. Rptr. 3d 854 (2008) (quoting *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 644–45 (1986)). Here, the Court is persuaded by the reasoning in *Cuenco* on this issue, which involved similar facts and arguments. *Cuenco v. Clubcorp*

*USA, Inc.*, No. 20-774, 2021 WL 2453279 (S.D. Cal. June 16, 2021). In her opposition to Defendants' motion to compel arbitration, Plaintiff argues that she did not provide mutual assent to arbitrate her claims because she "could not even access the Bylaws until after signing their membership agreements." Doc. No. 12 at 7–8; *see also* Pl. Decl. ¶ 5 ("I was not provided with the CLUB's Bylaws or arbitration agreement when I signed their membership agreement."). However, the relevant question is whether the document was known *or easily available* to the contracting parties. *Pulido*, 2020 U.S. Dist. LEXIS 158021, at *4; *see Wolschlager v. Fid. Nat'l Title Ins. Co.*, 4 Cal. Rptr. 3d 179, 185 (Cal. Ct. App. 2003) (considering that whether a party knows about an arbitration clause is irrelevant if the clause is easily available); *see also Lucas*, 875 F. Supp. 2d at 999 (stating the same); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1297 (N.D. Cal. 2018) ("[T]he current trend of California cases has been to enforce contracts even when consumers later receive the terms."). Plaintiff also contends that she "requested a copy of the Bylaws multiple times and was not provided with one." Doc. No. 12 at 7–8; Pl. Decl. ¶ 8 ("I requested the Bylaws from the CLUB on several occasions but the CLUB did not provide me with a copy. After several attempts, the CLUB eventually provided me with a copy of the Bylaws right before they terminated my membership with the CLUB."). However, as in *Cuenco*, Plaintiff signed a membership contract, which stated that she "acknowledge[d] receipt of a copy of the Membership Bylaws . . ." Fry Decl. ¶ 8; *see* Membership Application at 4. Additionally, as in *Cuenco*, Defendants proffer undisputed evidence that "the Bylaws were available to Plaintiffs through their private online membership portal after their membership applications were approved." *Cuenco*, 2021 WL 2453279, at *2; Doc. No. 10-2 ("Fry. Decl.") ¶¶ 6–7.[2] In particular, Defendants proffer a sworn declaration by Fernando Fry,

---

[2] The Court notes that neither Plaintiff's Declaration nor the briefing associated with Plaintiff's opposition to the motion to compel arbitration address the purported availability of the Bylaws through her online membership portal.

the General Manager of Morgan Run Club and Resort, who states that "[t]he Bylaws are always available to prospective members at the time of application and are provided either with the application or upon request" and that "a copy of the Bylaws is available via the Club's online portal, in person at the Club, and by phone or email request." Fry Decl. ¶¶ 6, 7.

The Court concludes that the Bylaws were easily available to Plaintiff. *See Ko v. Anthem Cos.*, No. SACV 19-2436 JVS (DFMx), 2020 U.S. Dist. LEXIS 52851, at *14 (C.D. Cal. Mar. 26, 2020) ("The Court finds that the Arbitration Policy was at least "easily available" to [the plaintiff], as it was contained within the portal she accessed when she submitted her onboarding documents, and called to her attention in her offer letter. . . [the plaintiff's] decision not to read the application she submitted and the offer letter she signed . . . does not prevent the formation of an agreement to arbitrate.") (citations omitted). "It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it." *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588 (2005) (citations and internal quotation marks omitted).

In sum, the Court concludes that all requirements for incorporation by reference have been met. Accordingly, the Court turns to the merits of Defendants' motion to compel arbitration.

Defendants assert that the following arbitration clause in the Bylaws applies:

> 11.13. Small Claims Court/Arbitration. Any controversy arising out of, or relating to these Bylaws or any Member's membership, or a breach, shall be settled by bringing a proper action in the small claims court, or its equivalent, if the controversy is within the jurisdiction of the small claims court. **Any controversy arising out of, or relating to, these Bylaws, or the Rules and Regulations, or any Member's membership, or a breach, which is not within the jurisdiction of the small claims court shall be settled by binding arbitration administered by the American Arbitration Association in**

**accordance with its rules**.  A judgment upon an award rendered by the arbitrator may be entered in any court having jurisdiction.  The initiating party shall give written notice to the other party of its decision to arbitrate by providing a specific statement setting forth the nature of the dispute, the amount involved, the remedy sought, and the hearing locale requested. The initiating party shall be responsible for all filing requirements and the payment of any fees according to the rules of the applicable regional office of the American Arbitration Association.   The arbitrator shall award to the prevailing party, if any, as determined by the arbitrator, all of its costs and expenses including attorney's fees, arbitrator's fees, and out-of-pocket expenses of any kind.   The consideration of the parties to be bound by arbitration is not only the waiver of trial by jury, but also the waiver of any rights to appeal the arbitration finding.

Doc. No. 10-4 ("Ex. 2") at 19–20 (emphasis added).

Because Plaintiff does not dispute that she signed a membership contract with Morgan Run, *see* Doc. No. 12 at 7–8, and based on the analysis *supra* regarding incorporation by reference of the Bylaws, the Court finds that Plaintiff assented to the contract and the arbitration clause contained in the Bylaws.

Next, Defendants argue that "[t]he Court's consideration of the second gateway question—whether the agreement covers the dispute—is limited in this instance by the presence of the delegation clause." Doc. No. 10-1 at 17.  Specifically, Defendants argue that the "Bylaws incorporate the AAA rules, which evidence the parties' clear and unmistakable intent to delegate arbitrability." *Id.*  Relatedly, Defendants urge that "[b]ecause the parties delegated arbitrability . . . Plaintiff's unconscionability arguments [] may only be decided by the arbitrator." Doc. No. 14 at 7 (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)).  Plaintiff argues that the arbitration provision is invalid because it is procedurally and substantively unconscionable.  Doc. No. 12 at 10–12.  Plaintiff did not respond to Defendants' delegation argument.

"[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *See Brennan v. Opus Bank*, 796 F.3d

1125, 1130 (9th Cir. 2015). Here, the arbitration provision states that claims not "within the jurisdiction of the small claims court shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its rules." *See* Ex. 2 at 19–20. Accordingly, the Court concludes that the issue of arbitrability—including unconscionability and whether the agreement encompasses the dispute at issue—was delegated to an arbitrator. The Court therefore declines to address Plaintiff's argument that the arbitration provision is unconscionable.

Accordingly, the Court **GRANTS** Defendants' motion to compel Plaintiff to arbitrate her claims against Morgan Run. Because the arbitration provision does not expressly provide for class arbitration, *see* Ex. 2 at 19–20, the Court compels individual arbitration.[3]

2.   *Arbitration of Claims Against Defendant ClubCorp*

Defendants argue that the Court should compel arbitration as to Defendant ClubCorp under a theory of equitable estoppel or because it is a third-party beneficiary of the agreement between Plaintiff and Defendant Morgan Run. Doc. No. 10-1 at 12, 15–17. Plaintiff did not respond to either of these arguments in her opposition.

Defendant ClubCorp is not a signatory to the membership contract. Nonetheless, there are "two circumstances" in California when a nonsignatory may enforce an arbitration clause under the doctrine of equitable estoppel:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and
>
> (2) when the signatory alleges substantially inter-dependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of

---

[3] Class-wide arbitration sacrifices the efficiency and cost benefits of "traditional individualized arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). "Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself." *Id.* at 1417.

        interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Kramer*, 705 F.3d at 1128–29 (quoting *Goldman*, 173 Cal. App. 4th at 219, 221). Where the claims against the signatory and nonsignatory are intertwined, allowing the plaintiff to evade arbitration with the nonsignatory would undermine the efficiency of arbitration and run the risk of duplicative decisions. *See Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 840 (N.D. Cal. 2007) ("[W]here a lawsuit against non-signatories is inherently bound up with claims against a signatory, the court should compel arbitration in order to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration.").

        The Court concludes Plaintiff is compelled to arbitrate her claims against Defendant ClubCorp under either prong of the Ninth Circuit's equitable estoppel test. As to the first prong, even if the Court allowed Plaintiff to proceed in this Court with her claims against Defendant ClubCorp, Plaintiff would still need to "rely on the terms of the written agreement" in asserting her claims. *Kramer*, 705 F.3d at 1128. The membership application—which incorporates by reference the Bylaws—is the foundation of Plaintiff's Complaint. Plaintiff alleges that the "the CLUB treated the male members more favorable than its female counterparts", and it is the Bylaws that set forth the "services and privileges . . . of Defendant's business establishment" that Plaintiff alleges were provided disparately to men and women. Compl. ¶¶ 1, 13. As to the second prong, both of Plaintiff's claims allege "substantially interdependent and concerted misconduct" between Defendant Morgan Run—a signatory—and Defendant ClubCorp—a nonsignatory. *See generally* Compl. Indeed, Plaintiff herself does not differentiate the Defendants' actions in her Complaint. Plaintiff alleges that both Defendants "own[] and [o]perate the CLUB" and thereafter refers to both Defendants as a monolith for all factual allegations in her Complaint. *Id.* ¶¶ 7–8, 12–31. For example, Plaintiff alleges "[t]he

CLUB held sex specific nightly tennis events on separate nights during the week. The CLUB provided more favorable amenities and benefits during the men's night tennis events as compared to the women's night tennis events." *Id.* ¶ 14. Similarly, the claims do not differentiate between Defendants. *Id.* ¶¶ 47–73. Without a reasonable basis for segregating Plaintiffs' allegations into arbitrable and non-arbitrable claims, all of Plaintiffs' claims against all of the Defendants must be arbitrated. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 1395733, at *4 (N.D. Cal. 2014) (compelling "arbitrat[ion] against all five NEC defendants . . . [where] the complaint often refers to the five defendants collectively as 'NEC.'"); *see also Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14 Civ. 8678 (CM), 2015 U.S. Dist. LEXIS 61421, at *42 (S.D.N.Y. 2015) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)) ("Where a plaintiff treats all defendants as a single unit in his complaint, it further supports estopping that plaintiff from shielding himself from arbitrating with certain defendants.").

Accordingly, consistent with the reasoning *supra* Section I.C.1, the Court **GRANTS** Defendants' motion to compel Plaintiff to arbitrate her claims, on an individual basis, against ClubCorp.

  3.  Arbitration-Related Discovery

In the alternative, Plaintiff requests leave to conduct arbitration-related discovery on "(1) whether Plaintiff received a copy of the Bylaws at the time when she signed the membership agreement, and (2) whether the arbitration agreement is unconscionable." Doc. No. 12 at 13.

As described *supra* Section I.C.1, whether Plaintiff received a copy of the Bylaws at the time she signed the membership contract is not decisive of any issue. Additionally, as is also described *supra* Section I.C.1, the arbitration agreement delegates arbitrability to the arbitrator. Accordingly, the Court **DENIES** Plaintiff's discovery request.

### 4. Stay or Dismissal

"A district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Notwithstanding this discretion, the Ninth Circuit's preference is for district courts to "stay[] an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014). The parties proffer no reason for the Court to depart from the Ninth Circuit's preference in this instance. Accordingly, the Court **STAYS** this action pending completion of the arbitration. *See* 9 U.S.C. § 3.

## II. MOTION TO DISMISS AND STRIKE

In light of the Court's decision regarding Defendants' motion to compel, the Court declines to rule on Defendants' motion to dismiss and strike.

## III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to compel arbitration and **STAYS** this action pending completion of arbitration. *See* 9 U.S.C. § 3. The Court therefore declines to rule on Defendants' motion to dismiss and motion to strike and **DIRECTS** the Clerk of Court to terminate that motion. *See* Doc. No. 11.

The parties shall proceed immediately to arbitration and shall file a joint report regarding the status of the arbitration every ninety (90) days until the arbitration is complete. The first status report shall be filed no later than ninety (90) days from the date of this Order.

**IT IS SO ORDERED**.

Dated: June 30, 2023

[signature]

HON. MICHAEL M. ANELLO
United States District Judge